## WESTERN AND ATLANTIC RAILROAD COMPANY *v.* CLARK.

1. In an action of tort, where the amount of the verdict is under the facts large and full, an erroneous charge, calculated to mislead the jury as to the manner in which they should arrive at the damages to be assessed, will require the granting of a new trial.
2. Where an erroneous rule of law is given to the jury on a material issue in the case, and is of such a nature as is calculated to mislead them, a new trial will be granted notwithstanding the correct rule may have been announced in other portions of the charge.
3. Applying the rules above stated to the facts of the present case, it was error requiring the granting of a new trial for the court to charge the jury as follows: " On page 845 of the mortality table, under the head of ' age' you will find the figures ' 32 ' — there is no controversy as to the age of the deceased. Opposite that, under the head of ' expectation years,' you will find the figures ' 33.03.' Those are the years of his expectancy. Then if you use the annuity table, which would be a shorter calculation than by the mortality table, you may look under the head of ' age,' and you will find the figures 33. These are the years of his expectancy, and then opposite and to the right of that you will find under the 7% column the figures 11.448. Having already found what you believe to be a fair average yearly value of the services of the deceased, you will multiply that by 11.448, and that will give you the amount of your verdict." The errors thus made were not cured by a proper qualification of the rules stated, in another portion of the charge.

Argued March 23, — Decided April 8, 1903.

Action for damages.    Before Judge Fite.    Bartow superior court. June 21, 1902.

*Payne & Tye* and *J. M. Neel,* for plaintiff in error.
*C. T. Ladson* and *John W. & Paul F. Akin,* contra.

Cobb, J.    This was an action by Mrs. Clark against the railway company for the homicide of her husband, who was an employee of the company. ·   The verdict was for $7,500, and the company assigns error upon the refusal of the court to grant it a new trial.

The case is upon its facts close and doubtful.    The motion for a new trial contains numerous grounds.    Upon two of these grounds we think the defendant was entitled to a new trial.    These grounds

assign error upon the charges set forth in the third headnote. It is true the judge charged the jury that they need not use the tables referred to in the above-quoted extracts from his charge, saying to them: "You may or may not use these tables, as you see proper," and "you are not bound to use these tables; you may use them if you see proper;" thus in two parts of the charge emphasizing the fact that the jury were not required to use the tables in arriving at the amount of their verdict. The judge was right, of course, in instructing the jury that they were not bound to use the tables; but the error, it seems to us, in the charges complained of is that the jury are instructed that if they do see proper to use the tables they must use them only in a certain way. They are not instructed that the table of mortality is simply an aid in determining what was the expectancy of the deceased, but they are in effect told that if they use the mortality table, as they have a right to do, the expectancy of the deceased is 33 years. As is well known, mortality tables are compiled from facts learned from observation and experience, taking a large number of persons from all classes of life, and thereby ascertaining the average age that one would probably live. If one is engaged in a dangerous occupation, the probabilities are that his expectancy would not be as long as that indicated by the tables. If one is engaged in an occupation that is almost entirely free from those dangers which imperil life, the probabilities are that his expectancy would be longer than that indicated in the table. In cases where the mortality table is relevant as evidence, the jury should always be told that it is simply an aid to be used along with other evidence in determining what would be the expectancy of a person whose duration of life is under consideration. It will be error in any such case for the court to tell the jury that the expectancy of an individual would be the age indicated by the table. While the table is a valuable aid to the jury, it is not binding and conclusive upon them in any case. But it is said that the charge complained of, properly construed, was simply a statement to the jury that 33 years was the expectancy of the deceased according to the table, and not his real expectancy, it being argued that the jury were left to determine from the table and all other circumstances what was the true expectancy of the deceased. It may be that this was what the judge intended to say; but we think the language was calculated to mislead the jury and

leave them under the impression that when they decided to use the table they must treat as the expectancy of the deceased the number of years stated in the table.    In the second charge complained of the judge uses the same language, in effect telling them that 33 years are the years of the expectancy of the deceased.    In this charge he tells them in substance that taking these as the years of his expectancy, and finding the figures in the annuity table opposite that number of years, and multiplying this by the fair average yearly value of the services of the deceased, they will obtain a sum which should represent the amount of their verdict.    We do not think the charge capable of any other interpretation.    The amount of the verdict is fixed by the judge at a sum to be arrived at by taking what the jury believed to be the fair average yearly earnings of the deceased and multiplying this by the figures given in the annuity table.    Mrs. Clark testified that her husband's average earnings were from $55 to $60 per month.    She said he always paid his board, but he generally brought from $55 to $60 home; that some months he brought more than others — it was 55, 65, 75, and 85 dollars, the most he ever brought home being $88.    She then repeats that the average earnings would be, as she supposed, from 55 to 60 dollars per month.    Taking the average between 55 and 60 as 57 1/2, $690 would be the amount of the yearly earnings of the deceased.    This sum multiplied by 11.448 gives $7,899.10, or $399.10 in excess of the amount of the verdict.    Of course, no one knows whether the jury decided to use the annuity table, and we can not know with certainty what took place in the jury-room when they were considering the question as to what should be the amount of their verdict.    It is certainly a singular coincidence that the amount of the verdict should be so nearly the amount which the charge of the judge would have required.    In a case of the character of the present, we think errors of this kind are such as to require the granting of a new trial.    The right of the plaintiff to recover is not by any means free from doubt.    If she is, a jury would not, on account of the dangerous occupation in which the deceased was engaged, be compelled to find that his expectancy was 33 years; and even if they did find this, they would not be required, or even authorized, to find that his average earnings throughout this entire period would continue to be between 55 and and 60 dollars.    While we do not now say as matter of law that

the verdict found by the jury was excessive, we do hold that the errors in the charge were of such a character as to mislead the jury as to what should be the amount of their verdict, and that, under the peculiar facts of this case, these errors were of such a character as to require the granting of a new trial. In a case where the verdict is full, an error in the charge which is calculated to mislead the jury into finding a larger amount than they might have under the evidence otherwise found will require the granting of a new trial. *Central Railway Co.* v. *Johnston*, 106 *Ga.* 130 (4); *Central Railway Co.* v. *Almand*, 116 *Ga.* 783.

It is said, though, that in other portions of the charge the judge gave the jury the correct rules. We do not think this would relieve the error; for it has been repeatedly ruled that where an erroneous rule is given to the jury on a material issue in the case, in such a way as to mislead them, a new trial will be granted, notwithstanding the correct rule may have been announced in another portion of the charge. See cases cited in *Central Railway Company* v. *Johnston*, supra.

We do not deem it necessary to consider in detail the numerous other assignments of error in the motion for a new trial. If any of them were well taken, similar errors will probably not be committed on another trial.

*Judgment reversed. By five Justices.*